UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BRYAN MECHE | *CIVIL ACTION NO. 6:09-1678 |
| VS. | * MAGISTRATE JUDGE HILL |
| MARINER ENERGY RESOURCES, INC., ET AL. | *BY CONSENT OF THE PARTIES |

MEMORANDUM RULING

Pending before the Court is the Motion for Summary Judgment filed by Mariner Energy, Inc. ("Mariner") and Prosper Operators, Inc. ("Prosper"), both of which are collectively referred to as the Defendants. [rec. doc. 34]. The plaintiff, Brian Meche ("Meche"), has filed opposition [rec. doc. 37], to which the Defendants filed a Reply [rec. doc. 42]. Oral argument on the Motion was held and the Motion was taken under advisement. Thereafter, with the permission of the Court, Meche filed a Supplemental Memorandum in Opposition to Summary Judgment. [rec. doc. 52].

For the reasons which follow, the Defendants' Motion for Summary Judgment [rec. doc. 34] is **denied.**

FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff contends that he was employed by Acadiana Production Service, Inc. ("Acadiana"), as a rigger and was working in the course and scope of his employment on an offshore fixed platform located on the Outer Continental Shelf, off of the coast of Louisiana, when he was injured. The platform was owned by Mariner.

Plaintiff contends that on June 15, 2009, he and other Acadiana employees, who were pre-fabricating a boat landing, had stopped welding operations and secured their equipment

to take a work break, when a methanol tank, owned by Mariner, "blew up." He alleges that the accident was caused by the concurrent negligence of the defendants in, *inter alia*, failing to provide a safe place to work (relocate flammable substances, ensure that the contents of the tank were inert) and failing to properly warn of the unsafe work area.

Mariner was initially named as the sole defendant in this suit. Mariner is alleged to be "an independent oil and gas exploration, development and production company." [rec. doc. 1, ¶ 5]. By Amended Complaint, Prosper was added as an additional defendant. Meche alleges that Prosper was engaged by Mariner "to conduct all aspects of the production operations" on Mariner's platform. [rec. doc. 20, ¶ 9]. Meche further alleges that Prosper's employees were Mariner's borrowed employees. [*Id.*]. Acadiana is a company which supplied contract labor to Mariner under a blanket service agreement, effective September 24, 2008, whereby Acadiana was to repair hurricane damage to offshore platforms owned by Mariner.

Meche had been working on various Mariner platforms from late September, 2008 until the accident on June 15, 2009. Meche had been working on the platform where he was allegedly injured since at least May 29, 2009; Meche was working with Prosper employee Kevin Broussard, on the platform for four days before the accident happened. *See* Meche depo, pg. 70-79; Broussard depo. pg. 39-40. Mariner provided transportation to and from the offshore platforms, as well as meals and lodging while Meche was on the platforms.

While on the Mariner platform, Meche worked with an Acadiana crew under the direct supervision of Alex Feverjean ("Feverjean"), a supervisor employed Acadiana. Kevin Broussard ("Broussard"), a Prosper employee, who was the Mariner representative and acting person-in charge of operations on the platform, would approve hot work permits. Plaintiff was required to attend daily safety meetings, although the person who conducted those meetings, and the content thereof, is not entirely clear from the record. Meche testified that Feverjean conducted those meetings, which were attended by Broussard, and at which safety, job codes and work location was discussed and a job safety analysis was signed by the workers. Meche depo. pg. 47-48. Broussard initially testified that he attended the safety meetings and then later testified that he conducted the meetings. Broussard depo. pg. 15, 39-40.

Under the blanket service agreement, Mariner and Acadiana agreed that Acadiana was an independent contractor and that none of its employees would be deemed employees of Mariner. ¶ 8.1. Mariner and Acadiana further agreed in the blanket service agreement that Mariner would have no direction or control over Acadiana or its employees, subject to Mariner's general right of inspection to assure the satisfactory completion of the work. *Id*. Consistent with this understanding, the blanket service agreement further required Acadiana to furnish all supervisory personnel and labor necessary to perform the contracted work. ¶ 7.

The blanket service agreement further purports to allocate some of the liability exposure that Mariner might have, providing that "[t]o the extent that the Louisiana Workers' Compensation Act is applicable, the employees of [Acadiana] . . . are statutory

3

employees of Mariner under the Louisiana Workers' Compensation Act . . . [and that Acadiana] will pay any compensation due to its . . . employees Louisiana Workers' Compensation Act, without any right of contribution, statutory or otherwise, from Mariner." ¶ 8.2. To that end, the blanket service agreement required Acadiana to maintain and provide Workers' Compensation insurance. ¶ 18 and Exhibit A.

The defendants move for summary judgment, claiming that Meche was Mariner's "borrowed employee" whose remedy is limited to workers' compensation benefits under the Longshoremen and Harbor Workers Compensation Act (LHWCA). *See* 33 U.S.C. § 905(a).

## LAW AND ANALYSIS

**Standard on Motion for Summary Judgment**

Federal Rule of Civil Procedure 56(c) provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

Rule 56(e) provides, in pertinent part, as follows:

When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Mariner's Motion for Summary Judgment is properly made and supported. Thus, Meche may not rest upon the allegations in his pleadings, but, rather, must go beyond the pleadings and designate specific facts demonstrating that there is a genuine issue for trial.

*Celotex v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553-54 (1986).

However, metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions and those supported by only a scintilla of evidence are insufficient. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Additionally, summary judgment is mandated against a party who fails to make a showing sufficient to establish an essential element of that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 106 S.Ct. at 2552.

Meche has submitted evidence in opposition to the instant Motion which demonstrates that there is a genuine issue of material fact necessitating a trial on the merits. Accordingly, summary judgment is not appropriate in this case, and is denied.

**Borrowed Employee Status**

It is undisputed that Meche is covered under the LHWCA. The LHWCA was designed to provide an injured employee with certain and absolute benefits in *lieu* of possible common law benefits obtainable only in tort actions against his employer. *Gaudet v. Exxon Corporation*, 562 F.2d 351, 356 (5th Cir. 1977) *citing Haynes v. Rederi A/S Aladdin*, 362 F.2d 345 (5th Cir. 1966), *cert. denied*, 385 U.S. 1020, 87 S.Ct. 731, 17 L.Ed.2d 557. Under the LHWCA an employee retains the right to sue third parties. *Id*. at 357 *citing Crawford v. Pope & Talbot, Inc.,* 206 F.2d 784 (3rd Cir. 1953). However, the employee cannot sue his employer, as the employer is immune from tort liability. *Id*. at 356-357; 33 U.S.C. § 905(a).

The Fifth Circuit has held that a borrowing employer is likewise immune from tort liability. *West v. Kerr-McGee Corporation*, 765 F.2d 526, 529-530 (5th Cir. 1985); *see also Gaudet, supra*. This is the case because if "an employee continues working in a new location, exposed to risks resulting from the direction and control of the new employer, there must come a time when policy dictates the LHWCA should apply, and the new employer, and new co-employees, should no longer be considered third parties but a true employer and true co-employees, liable only under the LHWCA." *Gaudet,* 562 F.2d at 357.

Thus in the instant case the question is whether the circumstances of Meche's employment are such that Mariner should be considered an employer and not a third party under the LHWCA.

The courts have recognized the concept of the borrowed employee or borrowed servant doctrine as follows:

> One may be in the general service of another, and, nevertheless, with respect to particular work, may be transferred, with his own consent or acquiescence, to the service of a third person, so that he becomes the servant of that person with all the legal consequences of the new relation.

*Gaudet*, 562 F.2d at 355 *quoting Standard Oil v. Anderson*, 212 U.S. 215, 220, 29 S.Ct. 252, 253, 53 L.Ed. 480, 483 (1909).

To determine whether an employee is the borrowed employee of another, courts "must inquire whose is the work being performed, a question which is usually answered by ascertaining who has the power to control and direct the (servant) in the performance of (his) work.*" Id. quoting Standard Oil,* 212 U.S. at 221-222.

The Fifth Circuit has set forth nine factors which may be considered when determining whether an employee is to be considered a borrowed employee of another:

(1) Who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation?

(2) Whose work is being performed?

(3) Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?

(4) Did the employee acquiesce in the new work situation?

(5) Did the original employer terminate his relationship with the employee?

(6) Who furnished tools and place for performance?

(7) Was the new employment over a considerable length of time?

(8) Who had the right to discharge the employee?

(9) Who had the obligation to pay the employee?

*Id. citing Ruiz v. Shell Oil Co.*, 413 F.2d 310, 312-13 (5th Cir. 1969). "[N]o one of these factors, or any combination of them, is decisive, and no fixed test is used to determine the existence of a borrowed-servant relationship." *Id.* at 356. Thus, the factors "are to be weighed as appropriate in each particular case." *Id.* The Fifth Circuit has, however, noted that the first factor, control, has often been the primary focus. *Brown v. Union Oil Co. of California*, 984 F.2d 674, 676 (5th Cir. 1993). *See also Melancon v. Amoco Production Co.*, 834 F.2d 1238, 1245 (5th Cir. 1988), *amended on other grounds*, 841 F.2d 572 (5th Cir. 1988); *Capps v. N.L. Baroid Industries, Inc.*, 784 F.2d 615, 617 (5th Cir. 1986).

The issue of borrowed employee status is a question of law. *Melancon*, 834 F.2d at 1244. However, the nine-factor analysis used to determine that question is fact-driven. *See Fontenot v. Mobil Oil Exploration & Producing Southeast, Inc.*, 997 F.2d 881 (5th Cir. 1993) (unpublished). Thus, when a case involves factual disputes concerning the factors, factual findings by the fact-finder must be made prior to the court's legal determination of borrowed employee status. *Brown*, 984 F.2d at 677 *citing Melancon,* 834 F.2d at 1245 n. 13, *West*, 765 F.2d at 531 and *Alday v. Patterson Truck Lines, Inc.*, 750 F.2d 375, 378 (5th Cir. 1985). In such cases, summary judgment is inappropriate. *See West,* 765 F.2d at 531; *Alday, supra*. *See also Trosclair v. Avondale Industries, Inc.,* 1993 WL 408336, *1 (E.D. La. 1993); *Hebert v. Pride Intern.*, 2004 WL 414959, *2 (E.D. La. 2004); *Brumfield v. Conoco, Inc.*, 1995 WL 468222 (E.D. La. 1995); *Barrios v. Freeport-McMoran Resource Partners Ltd. Partnership*, 1994 WL 90456, *2 (E.D. La. 1994).

Based on a review of the evidence submitted by the parties in support of, and in opposition to, the instant Motion, the Court has determined that factual issues remain in dispute, particularly as regards the first, third and fifth factors.

Factors one, three and five are interrelated inquiries that go to the issue of control. The question becomes whether Mariner exercised sufficient control over this employee, Meche, and the work he, Meche, performed (factor one) so that it can be said that Mariner and Acadiana modified their express contractual agreement (factor three), which prohibits application of the borrowed employee doctrine, and that Acadiana relinquished control over

Meche while he was working on the Mariner platform (factor five).  These inquiries require further factual findings before the Court can determine borrowed employee status as a matter of law.

On the issue of control, Mariner emphasizes that Broussard gave the Acadiana crew its daily work assignments and that he conducted daily safety meetings. Meche, on the other hand, points out that Acadiana had its own supervisor on site, Feverjean, under whom Meche worked.

Meche denied ever being supervised by Broussard, and further denied ever having communicated directly with Broussard.  Meche depo. pg. 47-48, 52, 72,81-84.  Further, while Feverjean reported to a Broussard, from whom he received signed hot work permits and authorization to proceed with work in various locations on the platform, Meche disputes that Broussard actively or directly supervised him, or the fabrication project on which he was working.  For instance, with respect to his assignment on "fire watch", Meche testified that if the level on the gas detector "reads over" he would go get his supervisor, not Broussard, because "he [Feverjean] got to correct it."  *Id*. at pg. 91-92.  Moreover, Meche testified that if he had been told that there was flammable liquid or gas in one of the tanks in the work area, he would have stopped and got his supervisor.  *Id*. at pg. 143.

Broussard was a production operator who did MMS testing, well testing and maintenance, and reported daily to Mariner on how the wells were doing; he did not describe himself as a supervisor or construction foreman.  Broussard depo. pg. 9; *see also*

9

Leezy depo. pg. 28 (noting that Broussard is not a welder and does not do fabrication work). Rather, Broussard testified that he would "constantly check" on the Acadiana workers and would be in the area to observe the work, but that their supervisor (Feverjean) would in turn talk to the crew. *Id*. at pg. 14-15, 22, 28. Notably, Broussard did not testify that he directed either Feverjean or Meche as to how the work was to be accomplished, or as to the way in which those details of the work were to be performed. Rather, he acknowledged that Acadiana had a supervisor present on the platform. *Id*. at pg. 14.

The Court further notes that while Mariner has submitted the affidavits of its authorized representative, Jack L. Leezy, and the authorized representative of Prosper, Randall Gunn, their deposition testimony, on the control issue, is weaker and more equivocal than the conclusory assertions made in their affidavits. In his deposition, Leezy acknowledged that the oil company's representative may ask the contractor's supervisor to have something done, but will not advise the contractor's supervisor how to do it, leaving the contracting crew to do its work. Leezy depo. pg. 30-31. He further testified that Acadiana's supervisor "got with" Broussard and discussed what was going to be done, and then the supervisor would tell his workers what was needed to be done. *Id*. at pg. 32.

Gunn likewise testified in his deposition, other than the safety meetings attended by everyone on the platform, the details of the day to day work were left to Acadian. Gunn depo. pg. 22-23.

10

Based on the foregoing, the Court concludes that there are disputed material issues of fact on the issue of control that precludes summary judgment on plaintiff's status as a borrowed employee. Moreover, as noted, these disputed factual issues also affect factors three and five. Indeed, that is the same conclusion reached by Judge Vance of the Eastern District in *Brumfield v. Conoco, Inc.*[1] on facts substantially the same as those presented in this case. Thus, summary judgment is not appropriate in this case.

Mariner argues that the Louisiana First Circuit Court of Appeals unpublished decision in *Mejia v. Boykin Brothers, Inc.*, 2010 WL 3526522 (La. App. 1st Cir. 2010) requires a different result. The undersigned disagrees. Initially, the Court notes that the *Mejia* case does not contain a detailed analysis of any of the factors supporting its decision, and does not cite a single decision with respect to any such factor. Furthermore, it appears that the court was presented only with the undisputed testimony of the plaintiff's foreman. There is no reference to any contradictory testimony contained in the record, either from the plaintiff or any other witness. That is not the case herein.

Moreover, the Court cannot accept Mariner's suggestion that the case stands for the blanket proposition that borrowed servant status may be found when a crew, rather than individual employee, is supplied. The critical distinction rests on the evidence which was presented to the court on the issue of the day to day control over the details of the plaintiff's work, not whether a crew, with or without a foreman, is provided.

---

[1] *Brumfield v. Conoco, Inc.*, 1995 WL 468222 (E.D. La. 1995).

## **CONCLUSION**

For the above reasons, Mariner's Motion for Summary Judgment [rec. doc. 34] is **denied.**

Signed this 21st day of January, 2011, at Lafayette, Louisiana.

_C. Michael Hill_
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE